**UNICARE HEALTH FACILITIES, INC.,**
a Wisconsin Corporation, Plaintiff,

v.

Jeffrey C. MILLER, Acting Director of
the Illinois Department of Public Aid;
and Dr. Robert DeVito, Director of the
Illinois Department of Mental Health
and Developmental Disabilities, Defend-
ants.

No. 79 C 2897.

United States District Court,
N. D. Illinois, E. D.

Dec. 14, 1979.

Stephen C. Shamberg, Judi Fishman,
Friedman & Koven, Chicago, Ill., for plain-
tiff.

William J. Scott, Ill. Atty. Gen., James C. O'Connell, Sp. Asst. Atty. Gen., Welfare Litigation Div., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

### CROWLEY, District Judge.

This is an action for declaratory and injunctive relief and reimbursement for reasonable cost of services brought under Title XIX of the Social Security Act, commonly known as Medicaid. 42 U.S.C. § 1396 et seq. Plaintiff, a private for profit corporation which operates an intermediate care facility for the mentally retarded, North Aurora Center, challenges the Illinois Medicaid Program as violative of certain federal regulations, the Supremacy clause of the Constitution of the United States and the equal protection and due process clauses of the Fourteenth Amendment.

Defendants are Jeffrey C. Miller, Acting Director of the Illinois Department of Public Aid, the agency responsible for the administration and supervision of the Illinois Medicaid Program and Robert deVito, the Director of the Illinois Department of Mental Health and Development Disabilities, the agency delegated to provide community programs for active treatment and rehabilitative services for residents of intermediate care facilities for mentally retarded persons.

Plaintiff alleges that the Illinois Medicaid plan violates federal regulation, 42 C.F.R. § 447.302(b), in that it fails to adequately reimburse plaintiff for the reasonable costs allowable for operating an intermediate care facility. In so doing, plaintiff challenges various methods adopted by IDPA for calculating payments for services rendered to eligible recipients. The major challenge is directed to the provision in the Illinois plan that creates a separate classification for state operated intermediate care facilities for the mentally retarded. Plaintiff alleges that such a classification is arbitrary and capricious because it results in reimbursements being made solely on the basis of the state operated classification rather than on the basis of the number of residents, the degree of the residents' retardation or services provided in compliance with federal regulations and state licensing and certification prerequisites. The result, according to the complaint, is that plaintiff is forced to absorb the cost of required services for which the federal Medicaid Act permits reimbursement. In contrast, plaintiff argues, although North Aurora houses persons with similar degrees of retardation and is therefore required to provide similar kinds of services as state operated facilities, state operated facilities receive substantially higher reimbursement payments. Finally, the complaint avers that federal regulations require that Day Care services be provided as part of habilitation services and that day care is an allowable cost. 42 C.F.R. § 477.279(b). Under the Illinois plan, however, payments for day care services are not allowed because such services are presumably covered by programs funded under Title XX, 42 U.S.C. § 1397 et seq. Plaintiff alleges that less than half of North Aurora's residents receive benefits under Title XX and that because day care is a required service North Aurora is obligated to pay the costs.

This matter is currently before the Court on plaintiff's motion for issuance of a preliminary injunction. Plaintiff contends that defendants' failure to pay the reasonable costs of allowable services has caused plaintiff to operate at a deficit and now threatens plaintiff's ability to continue to operate North Aurora Center. Thus, plaintiff seeks to enjoin defendants from implementing the challenged provisions of the Illinois Medicaid plan and seeks reimbursement for reasonable costs expended for required services, including day care programming.

■ A preliminary injunction is appropriate if (1) plaintiff has a "reasonable likelihood" of success on the merits; (2) there is no adequate remedy at law and irreparable harm will occur unless an injunction is issued; (3) the threatened injury to plaintiff outweighs the burden of the injunction on defendant; and (4) the injunction will not

disserve the public interest. *Fox Valley Harvestore v. A. O. Smith Harvestore Products, Inc.,* 545 F.2d 1096, 1097 (7th Cir., 1976). Each of these factors must be shown before an injunction is issued.

■ Medicaid is a program designed to aid persons whose economic resources are insufficient to meet the cost of medical care. The federal government provides matching funds to participating states. Although the state must comply with certain federal requirements, the actual administration of the Medicaid program is placed in the state agency which in turn transmits payments to providers of services. Before a Medicaid program may be implemented, the state must submit a plan to HEW for approval, and substantial deference is accorded the state in devising methods for administering its program. *District of Columbia Podiatry Society v. District of Columbia,* 407 F.Supp. 1259, 1263 (D.D.C., 1975); *Briarcliff Haven, Inc. v. Department of Human Resources of Georgia,* 403 F.Supp. 1355, 1361 (N.D.Ga., 1975).

Plaintiff contends that by classifying state facilities separate from private facilities in addition to imposing reimbursement ceilings, the Illinois plan violates 42 C.F.R. § 447.305 which requires that the plan set reasonable criteria for the class. Plaintiff argues that reasonable criteria must be based on factors that assist the agency in establishing payment rates that fully reimburse all economically and efficiently operated facilities and that because the state operated facility classification bears no relation to the number or needs of a facility's residents, it is arbitrary and capricious.

Although the evidence submitted with this motion shows that state operated facilities receive larger amounts of reimbursements than privately operated facilities, that fact alone does not necessarily disqualify the class under the regulation. The federal statutory scheme contemplates that the state be given great flexibility in establishing methods for arriving at a reasonable cost related basis for purposes of reimbursing intermediate care facilities under 42 U.S.C. § 1396a(13)(E). *See* 41 Fed.Reg.

27303 (July 1, 1976). Congress understood that the use of class base methods of computation would not always result in precise calculations. *See* 41 Fed.Reg. 27303 (July 1, 1975). Nevertheless, Congress intended to sacrifice some precision to permit the use of simpler and less expensive methodologies.

■ The separate category for state operated facilities, although perhaps not the most precise or fair method for calculating the reasonable cost basis, is justified by a number of factors. On an average the percentage of severe or profoundly retarded residents is greater in state facilities than in private facilities. A greater number of state facilities' residents are afflicted with multiple handicaps which require additional services and care. In addition, state facilities must provide medical care for their residents whereas residents in private facilities are attended by outside physicians reimbursed separately under Title XIX. This is not to say that in certain cases, such as North Aurora's, a private facility does not house a large percentage of severe or profoundly retarded residents. However, the state, in designing its plan, is not required to establish its reimbursement rate on an institution by institution basis, 41 Fed.Reg. 27303 (July 1, 1976); the purposes of this classification are not totally unrelated to determining a reasonable cost basis for services.

Section 447.302(b) of the Federal Regulations provides that "Payment rates must not be set lower than rates that the agency reasonably finds to be adequate to reimburse in full the actual allowable costs of a facility that is economically and efficiently operated." 42 C.F.R. § 447.302(b) (1978). Plaintiff argues that defendants have not complied with this section because North Aurora has not been reimbursed in full for allowable costs of providing required services.

Under the Illinois plan all private intermediate care facilities for the mentally retarded in the metropolitan Chicago area are grouped together and a median ceiling is applied to certain costs. A Social Point Count System is used to calculate reim-

bursements to providers who are required to establish additional programs or services.

Plaintiff challenges the use of the median ceiling claiming that the program costs required by federal regulations for the number and kinds of residents housed in North Aurora greatly exceeds the median ceiling. In addition, plaintiff asserts that because the Illinois plan uses a different method to calculate the money value assigned to each point for state than for private facilities, state facilities receive substantially greater reimbursement payments.

■ Under Title XIX the state is not required to reimburse a provider for every allowable cost. *Association of Health Care Facilities, Inc. v. Minnesota Department of Public Welfare*, 602 F.2d 150, 153 (8th Cir., 1979). The statute merely provides that payments be made on a reasonable cost related basis established by the state plan. 42 U.S.C. § 1396a(13)(E). The state may adjust the allowable costs provided that the rates are not set so low that reasonable costs would not be covered. The cost related rates may be calculated on a class basis, even though the method used results in underpayments to some providers. 41 Fed. Reg. 27303 (July 1, 1976).

■ Plaintiff asserts that under federal regulations it is required to provide certain vocational and educational programs, but that under the Illinois plan it is not reimbursed for the cost of those services. Plaintiff also claims that under Title XX, 42 U.S.C. § 1397, defendants are obligated to make certain day care services available and that the City of North Aurora does not have sufficient community based services to meet the needs of North Aurora Center's residents.

Title XX gives the states "maximum freedom" in providing services and allocat-

ing funds. S.Rep.No.93–1356, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 8133, 8138. In addition, the regulation promulgated under that statute specifically prohibits the use of Title XX funds to reimburse facilities for vocational training and educational activities. 42 C.F.R. § 441.13(b) (1978). The Illinois plan provides reimbursement payments for such services to be made under the Social Point Count System.

Based on a review of the documents submitted on this motion and an examination of the applicable statutes and regulations plaintiff has failed to demonstrate a substantial likelihood of success on the merits.[1] Since that factor must be established before a preliminary injunction is issued, plaintiff's motion for a preliminary injunction is denied.

---

1. A showing that the Illinois plan conflicts with federal regulations is a prerequisite for establishing a viable claim for violation of the Supremacy Clause. Since no such conflicts have been shown, plaintiff has not demonstrated a likelihood of success on that claim. Similarly, plaintiff's argument that the Illinois plan violates the Fourteenth Amendment are without merit. *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).