37 F.3d 442
 YESLER TERRACE COMMUNITY COUNCIL, a non-profit corporation
organized and existing under the laws of the State of
Washington; and Eric Bolden, individually and on behalf of
all others similarly situated, Plaintiffs-Appellants,
v.
Henry G. CISNEROS,* in his official capacity
as Secretary, United States Department of Housing
and Urban Development; U.S. Department
of Housing and Urban
Development,
Defendants-Appellees.
 No. 92-35603.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1993.
Decided Sept. 12, 1994.
 
 David Girard, Evergreen Legal Services, Seattle, WA, for plaintiffs-appellants.
 Bruce G. Forrest, Robert Zemer, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before: GOODWIN, CANBY, and KOZINSKI, Circuit Judges.
 CANBY, Circuit Judge.
 
 
 1
 The Department of Housing and Urban Development (HUD) determined that Washington's state court eviction procedures satisfy the basic elements of due process, thereby allowing public housing authorities in Washington to evict tenants accused of criminal activity without first affording them an informal grievance hearing. Yesler Terrace Community Council sued, contending that HUD's determination is invalid because it was made without giving public housing tenants notice and an opportunity to comment. The district court granted summary judgment for HUD. We reverse.
 
 
 2
 * Plaintiffs Yesler Terrace Community Council and Eric Bolden (collectively "Yesler") represent a class of tenants in public housing projects in Washington state.[1] Public housing tenants ordinarily may be evicted only after a grievance hearing before the public housing authority (PHA) that administers their residence. 42 U.S.C. Sec. 1437d(k). In cases of eviction for drug-related or certain other criminal activity, however, PHAs may omit the otherwise mandatory grievance procedures, but only if HUD has determined that state court eviction procedures satisfy the elements of due process as defined in 24 C.F.R. Sec. 966.53(c). Id.
 
 
 3
 In December 1991, HUD advised the governor of Washington that it had determined that Washington's state court eviction procedures satisfy the elements of due process, and that Washington's PHAs therefore could dispense with grievance hearings for crime-related evictions. Several Washington PHAs subsequently amended their leases and grievance procedures to take advantage of HUD's determination. Then, on March 24, 1992, the Seattle Housing Authority served Marla Davison with an eviction notice stating that she would not be afforded a grievance hearing because her eviction was due to alleged criminal activity.
 
 
 4
 A few days later, Yesler and Davison brought this action, seeking injunctive and declaratory relief on the ground that HUD violated 42 U.S.C. Sec. 1437d(k), the Administrative Procedure Act (APA), 5 U.S.C. Sec. 551 et seq., and HUD's own regulations, 24 C.F.R. Sec. 10.1, when it issued its due process determination without first providing notice and opportunity to comment.[2] The district court granted summary judgment for HUD, and this appeal followed.
 
 II
 
 5
 As a threshold matter, HUD challenges Yesler's standing to bring this action. Ordinarily, a plaintiff must establish three elements to have standing. First, the plaintiff must point to a concrete injury which the plaintiff personally has suffered or with which it is imminently threatened (an "injury in fact"). Lujan v. Defenders of Wildlife, --- U.S. ----, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Second, the plaintiff must show that the alleged injury is "fairly traceable" to the defendant's action. Id. Third, the plaintiff must demonstrate that a favorable decision is likely to redress that injury. Id. When a plaintiff challenges an agency action under the APA, it also must show that the interests it seeks to protect are "arguably within the zone of interests to be protected" by the statute in question. Association of Data Processing Service Orgs., Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). We conclude that Yesler satisfies all of these requirements.
 
 
 6
 Yesler asserts that it was injured when HUD, without following notice and comment rulemaking procedures, determined that Washington PHAs can dispense with grievance hearings in crime-related evictions. There is no question that a "procedural injury" can constitute an injury in fact for the purpose of establishing standing. See Defenders, --- U.S. at ---- n. 7, 112 S.Ct. at 2142 n. 7; Dellums v. Smith, 797 F.2d 817, 821 (9th Cir.1986). However, not every procedural injury will do. To have standing, a plaintiff must be seeking "to enforce a procedural requirement the disregard of which could impair a separate concrete interest." Defenders, --- U.S. at ----, 112 S.Ct. at 2142; see also Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, ---- (9th Cir.1994). Thus the Court opined in Defenders that someone living next door to the site of a proposed federally licensed dam would have standing to challenge the licensing agency's failure to prepare an environmental impact statement, whereas someone living across the country from the proposed dam would not have standing. Id. at ----, 112 S.Ct. at 2142 n. 7; see also Pacific Northwest Generating Co-op v. Brown, 25 F.3d 1443, 1449 (9th Cir.1994) (plaintiffs whose way of conducting business may be affected by agencies' failures to comply with Endangered Species Act "can be compared to the person living next to the proposed dam"); City of Davis v. Coleman, 521 F.2d 661, 670-71 (9th Cir.1975) ("The procedural injury implicit in agency failure to prepare an EIS--the creation of a risk that serious environmental impact will be overlooked--is itself a sufficient 'injury in fact' to support standing, provided this injury is alleged by a plaintiff having a sufficient geographical nexus to the site of the challenged project.").
 
 
 7
 Plaintiffs here do not live across the country; they live in Washington in the very housing that HUD's decision affects. As a consequence of HUD's decision, they, personally, now are subject to the threat of eviction for alleged criminal activity without recourse to an informal grievance hearing. The interests protected by the notice and comment rulemaking to which plaintiffs claim they are entitled are concrete and personal. Their geographical nexus to HUD's action is clear.
 
 
 8
 We also find that the threat to plaintiffs' interests is sufficiently real; it is neither imaginary nor speculative. See Blum v. Yaretsky, 457 U.S. 991, 1000, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982). On March 27, 1992, the Seattle Housing Authority served Marla Davison with notice that she would be evicted and that she had no right to a grievance hearing. The Housing Authority voluntarily rescinded this notice only after Yesler and Davison brought this action. Then, on April 27, 1992, the Tacoma Housing Authority served Eric Bolden with notice that he was to be evicted and that he had no right to a grievance hearing. Only after Yesler amended its complaint, substituting Bolden as a named plaintiff, did the Authority voluntarily rescind that notice. The fact that Bolden and Davison were served with such notices establishes that there is an immediate threat to plaintiffs' concrete interests. See id. That the eviction notices served on Bolden and Davison were rescinded does not alter our conclusion. See United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953) (voluntary cessation of a challenged activity is not ground for dismissing an action as moot). We conclude that Yesler has alleged an injury sufficient to confer standing.
 
 
 9
 As to the other Article III standing requirements, HUD notes that it did no more than provide an opportunity for the PHAs--third parties--to act; PHAs, not HUD, actually initiate evictions. HUD contends, therefore, that it cannot be the cause of Yesler's alleged injury, and that a favorable decision on our part cannot redress that injury. We agree that it usually is difficult to establish causation and redressibility when a plaintiff's alleged injury depends on the actions of a third party not before the court. See Defenders, --- U.S. at ----, 112 S.Ct. at 2137. Because neither the court nor the defendant can control the third party's actions, the causal link between the defendant's challenged actions and the plaintiff's threatened injuries may be only speculative, as will the possibility that a favorable decision will redress those injuries. Id. In the present case, however, there is no need to speculate whether or not the PHAs will act upon HUD's decision. Several PHAs already have moved to eliminate pre-eviction grievance hearings in cases involving allegations of criminal activity, and at least two have initiated evictions in which they informed the tenant that there would be no grievance hearing.[3] Nor is there any doubt that the PHAs will have to reinstitute grievance hearings for all attempted evictions if we invalidate HUD's ruling. We conclude that there is a sufficiently clear connection between HUD's actions and the injury with which plaintiffs are threatened to satisfy the remaining standing requirements of Article III. See id. (when standing hinges on choices made by a third party, plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressibility of injury").[4]
 
 
 10
 Finally, we conclude that plaintiffs' interests in the terms and conditions of their tenancies fall squarely within the zone of interests protected by the statutes it alleges HUD violated. HUD does not argue to the contrary. Yesler, therefore, has standing to bring this action.
 
 III
 
 11
 The APA rulemaking requirements do not apply to agency rules "relating to ... public property, loans, grants, benefits, or contracts." 5 U.S.C. Sec. 553(a)(2). HUD, however, voluntarily has adopted requirements for notice and comment rulemaking in these situations. See 24 C.F.R. Sec. 10.1. The sole substantive question presented in this appeal is whether, under section 10.1, HUD was required to use notice and comment rulemaking procedures in making its determination that Washington state-court eviction procedures met HUD's due process standards.
 
 
 12
 * HUD argues that regardless of whether section 10.1 would have required notice-and-comment rulemaking in this case, the United States Housing Act, 42 U.S.C. Sec. 1437d(k), sets out specific procedures to be used in making due process determinations, and therefore overrides HUD's regulation in this particular. The statutory language, however, does not support this argument. Section 1437d(k) provides:
 
 
 13
 For any grievance concerning an eviction or termination of tenancy that involves any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises of other tenants or employees of the public housing agency or any drug related activity on or near such premises, the agency may (A) establish an expedited grievance procedure as the Secretary shall provide by rule under section 553 of Title 5, or (B) exclude from its grievance procedure any such grievance, in any jurisdiction which requires that prior to eviction, a tenant be given a hearing in court which the Secretary determines provides the basic elements of due process (which the Secretary shall establish by rule under section 553 of Title 5).
 
 
 14
 HUD points out that this statute explicitly requires HUD to proceed by notice-and-comment rulemaking in specifying expedited grievance procedures and in establishing its list of basic elements of due process, but does not mandate notice-and-comment rulemaking for HUD's determination that a specific state's procedures meet those due process requirements. From this fact, HUD would infer a congressional intent that rulemaking procedures are to be dispensed with in making the latter determinations.
 
 
 15
 We decline to read such an imperative into Congress's silence. When section 1437d(k) was enacted, HUD's own regulations required HUD to provide notice and an opportunity to comment prior to promulgating any substantive rule. See 24 C.F.R. Sec. 10.1. By requiring HUD to conform to the notice-and-comment rulemaking procedures of APA section 553 when it promulgates expedited grievance procedures and when it identifies the "basic elements of due process," Congress intended to mandate rulemaking procedures for these actions regardless of whether HUD's own regulations require notice and comment. It does not follow, however, that Congress intended to forbid HUD to employ rulemaking procedures when determining that a particular state's procedures met HUD's due process requirements. At most, Congress's silence as to these determinations indicates its willingness to let HUD's own regulations dictate whether it ought to proceed by notice-and-comment rulemaking. Therefore, as long as section 10.1 exists, HUD must make due process determinations in compliance with its requirements. See Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) (agency must comply with its own procedures when the rights of individuals are at stake).
 
 B
 
 16
 Section 10.1 requires HUD to proceed by notice and comment rulemaking whenever it promulgates a substantive rule. HUD maintains that section 10.1 does not apply here because the determination that Washington's eviction procedures meet regulatory due process standards is not a rule at all, but instead is an order stemming from an informal adjudication. We find little support for this position, even under the most deferential standard of review. See United States v. Larionoff, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (agency's interpretation of its own regulation must be upheld unless plainly erroneous or inconsistent with the regulation).
 
 A rule is:
 
 17
 [T]he whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency....
 
 
 18
 5 U.S.C. Sec. 551(4).[5] An adjudication (which results in an order) is virtually any agency action that is not rulemaking. 5 U.S.C. Sec. 551(6)-(7). Two principal characteristics distinguish rulemaking from adjudication. First, adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals. See United States v. Florida E. Coast Ry., 410 U.S. 224, 244-45, 93 S.Ct. 810, 820-21, 35 L.Ed.2d 223 (1973); Ford Motor Co. v. FTC., 673 F.2d 1008, 1010 (9th Cir.1981), cert. denied 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 394 (1982). Second, because adjudications involve concrete disputes, they have an immediate effect on specific individuals (those involved in the dispute). Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule subsequently is applied. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 216-17, 109 S.Ct. 468, 476, 102 L.Ed.2d 493 (1988) (the "central distinction" between rulemaking and adjudication is that rules have legal consequences "only for the future") (Scalia, J., concurring) (emphasis added); Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908).
 
 
 19
 Here, HUD's determination that Washington's state-court eviction procedures met HUD's due process requirements has all the hallmarks of a rule. HUD's determination had no immediate, concrete effect on anyone, but merely permitted PHAs to evict tenants in the future without providing them with informal grievance hearings. At the same time, the determination affected the rights of a broad category of individuals not yet identified. Before the decision was made, all public housing tenants in Washington had a statutory right to a pre-eviction grievance hearing. After the decision, no public housing tenant accused of certain criminal activity had such a right. We conclude that HUD's determination was a rule.
 
 
 20
 We do not attach great significance to HUD's observation that the manner in which it made its decision shares certain features with adjudications. HUD contends that to make the disputed determination, it merely had to compare the elements of due process set out in 24 C.F.R. Sec. 966.53(c) with Washington's eviction procedures. This "application of a rule of decision to a particular set of facts," HUD argues, indicates that due process determinations are "adjudicative in nature." HUD's description of the process, however, is incomplete. Nothing in the statute requires HUD to make a due process determination in the first place. Before proceeding to make the determination, HUD had to decide whether to take any action at all. This decision plainly involved more than applying a rule of decision to particular facts. Therefore, even if HUD were correct that the process by which a decision is reached determines whether the decision is a rule or an order, we could not characterize its decision here as an adjudication.
 
 
 21
 In any event, HUD's premise is flawed. The form of the proceeding is not dispositive; what counts is its effect. See FTC v. Brigadier Indust. Corp., 613 F.2d 1110, 1117 (D.C.Cir.1979) ("[T]he focus is not on whether the particular proceeding involves trial-type devices but instead turns on the nature of the decision to be reached in the proceeding"). HUD's purported "adjudication" had no effect on the State of Washington. The sole effect of HUD's decision was to deprive a broad category of people of the right to an informal grievance hearing prior to eviction, and this effect had legal consequences for yet-to-be-identified individuals only prospectively. These are the effects of a rule, not of an adjudication. See Flagstaff Medical Center, Inc. v. Sullivan, 962 F.2d 879, 886 (9th Cir.1992) (interpretative rules "are used more for discretionary fine-tuning than for general law making"). An agency cannot avoid the requirement of notice-and-comment rulemaking simply by characterizing its decision as an adjudication. See NLRB v. Wyman-Gordan Co., 394 U.S. 759, 764, 89 S.Ct. 1426, 1429, 22 L.Ed.2d 709 (1969) (plurality opinion) (agency cannot avoid rulemaking requirements by making rule in course of adjudication).
 
 C
 
 22
 We similarly reject HUD's contention that, even if its decision was a rule, it was interpretive, not substantive, and thus notice and comment procedures were not required. See 24 C.F.R. Sec. 10.1 (excluding interpretive rules from notice and comment requirements). Interpretive rules "simply clarify or explain existing law or regulations." Linoz v. Heckler, 800 F.2d 871, 877 (9th Cir.1986). They do not conclusively affect the rights of private parties. Id. Substantive rules, in contrast, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress. See Alcaraz v. Block, 746 F.2d 593, 613 (9th Cir.1984).
 
 
 23
 Here, HUD's due process determination plainly was a substantive rule. Section 1437d(k) does not, on its own, alter tenants' rights to a grievance hearing. It merely gives HUD the authority to make due process determinations. HUD therefore did more than construe the statute. Prior to HUD's decision, public housing tenants in Washington had a statutory right to a pre-eviction hearing. HUD's decision, made pursuant to authority granted by Congress, eliminated that right for a class of tenants. Therefore, it was a substantive rule. Id.
 
 CONCLUSION
 
 24
 When HUD implemented 42 U.S.C. Sec. 1437d(k), and decided that Washington's state eviction procedures satisfy the basic elements of due process, it promulgated a substantive rule. Because it did so without providing notice and an opportunity to comment, in violation of its own regulations, the rule thus promulgated is invalid. See Morton v. Ruiz, 415 U.S. at 235, 94 S.Ct. at 1074.[6] Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 25
 REVERSED and REMANDED.
 
 KOZINSKI, Circuit Judge, dissenting:
 
 26
 I do not agree that anyone here has standing to challenge HUD's action. None of the named plaintiffs is actually threatened with an eviction stemming from drug-related or other criminal activities, nor has Yesler alleged that any of its members are now under such a threat. Indeed, the plaintiffs before us--like the vast majority of public housing tenants in the state of Washington--will probably never face eviction for drug-related or other criminal activities, and thus will never be adversely affected by HUD's action. The only injury they can allege is that they feel less secure in the possession of their premises because someday they might be evicted without a pre-eviction hearing. This is far too ethereal to constitute "injury in fact" for purposes of establishing standing under Lujan v. Defenders of Wildlife, --- U.S. ----, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
 
 
 27
 We might well adopt a more relaxed standing requirement in cases where we know that some individuals within a large group will suffer an injury, but won't ever be able to identify them with any certainty. One such situation might involve a group of people subjected to an increased risk of cancer because of an agency's decision to site a toxic waste dump near their homes; some people within the group may contract cancer who otherwise would not have, but their identities will always remain a mystery. In such a case, it may make sense to accord standing to everyone in the affected group because the passage of time will not help us identify the injured group more precisely.
 
 
 28
 Our case is different. The only tenants who will suffer the type of "concrete and particularized" injury required by Lujan are those actually evicted for criminal activities. Though these individuals can't be identified now, eventually we will know precisely who they are. Then and only then will we have before us plaintiffs who have suffered an injury in fact attributable to HUD's action.
 
 
 
 *
 Henry G. Cisneros has been substituted for original defendant Jack Kemp, pursuant to Fed.R.App.P. 43(c)(1)
 
 
 [1]
 Because of its disposition of the case below, the district court did not rule on plaintiffs' motion for class certification. The fact that a class has not been certified does not affect our analysis
 
 
 [2]
 On May 5, 1992, Yesler filed an amended complaint, substituting Eric Bolden for Marla Davison as a named plaintiff
 
 
 [3]
 The Yakima Housing Authority, Sunnyside Housing Authority, Tacoma Housing Authority, Pierce County Housing Authority, and Seattle Housing Authority all changed their procedures after HUD gave them permission to do so. The King County Housing Authority has initiated procedures to eliminate grievance hearings. The Seattle and King County Housing Authorities concede that they made these changes in response to HUD's due process determination
 As noted above, both the Seattle Housing Authority and the Tacoma Housing Authority initiated evictions against named plaintiffs in which they intended to take advantage of these new procedures.
 
 
 [4]
 The possibility that HUD might make the same decision even if we require it to go through notice and comment rulemaking, is of no consequence. Like the immediacy requirement, the redressibility requirement is relaxed in cases where a plaintiff asserts a procedural injury. Defenders, --- U.S. at ---- n. 7, 112 S.Ct. at 2142 n. 7. The possibility that any given tenant might be evicted even if provided with a grievance hearing is irrelevant for the same reason. See id
 
 
 [5]
 Because section 10.1's requirements are "substantially the same as those prescribed in the APA," Lee v. Kemp, 731 F.Supp. 1101, 1112-13 (D.D.C.1989), we look to the APA and to decisions construing it to aid our analysis of the issues presented in this appeal
 
 
 [6]
 In view of this conclusion, we need not reach Yesler's contention that the due process determination was invalid because HUD failed to look to the actual practices of Washington courts in deciding whether state court eviction procedures satisfy the basic elements of due process. Yesler, of course, is free to bring these practices to HUD's attention in any future rulemaking