DECISION
This matter is before the Court on the appeal of Westerly Nursing Home, Inc. ("Appellant") from a decision of the Rhode Island Department of Human Services (the "Department"). The Department's decision, dated January 2, 2007, affirmed the determination of the Department's Rate Setting Unit that a certain part of Appellant's construction project qualified as a renovation rather than a replacement of beds. Appellant filed a timely appeal to this Court on January 30, 2007. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts and Travel
Appellant owns and operates a sixty-six bed, full-service nursing facility located in Westerly, Rhode Island. The Department is responsible for administering Rhode Island's Medical Assistance Program ("Medicaid") under G.L. 1956 § 40-8-1 et seq. Pursuant to G.L. 1956 § 40-8-19(a), the Department is required to promulgate regulations providing for the reimbursement of services that nursing facilities supply to Medicaid-eligible individuals. The regulations adopted under that statutory authority are known as the Principles of Reimbursement for Nursing Facilities (the "Principles"). In general, the Principles allow a nursing facility to increase the amount it receives in reimbursement by investing in its infrastructure through adding *Page 2 
or replacing beds, or by performing renovations. Reimbursement is paid on a per patient, per day basis.
In 2001, Appellant — at that time licensed for a total of sixty beds — began a three-phase construction and renovation project of its existing facility in order to remain competitive with other nursing facilities, and to comply with federal regulations. In Phase 1, Appellant removed six beds from service, temporarily reducing its capacity to fifty-four beds. Appellant then constructed an additional wing containing twenty-six new beds. In Phase 2, Appellant renovated the common areas of the existing wings and converted previously existing bed space to living, dining, and therapeutic areas. Phase 3 involved work on Appellant's administrative areas and replacement of the facility's roof. Completion of the project resulted in an increase in capacity from sixty beds to sixty-six beds.
After finishing construction and renovation, Appellant requested an exit review conference with the Department in order to review its rate of reimbursement. The Principles utilize a Fair Rental Value System ("FRVS") in order to determine a nursing facility's entitlement to reimbursement. Under the FRVS, a nursing facility receives a greater amount of reimbursement for work qualifying as an addition or replacement of beds than it does for facility renovations.
The exit review conference was held on March 1, 2006. The Department found that Phase 1 — the construction of a twenty-six bed addition — resulted in the addition of six new beds and the replacement of twenty existing beds. The Department then held that the work performed in Phase 2 consisted of renovations to Appellant's facility and did not qualify as a more favorable addition or replacement of beds. Appellant agreed with the Department's *Page 3 
determination as to Phase 1 but objected to the finding that Phase 2 constituted a renovation rather than an addition or replacement of beds.[1]
On April 20, 2006, the Department held a review conference with Appellant. The Associate Director of the Division of Health Care Quality, Financing and Purchasing upheld the Department's decision in a letter dated May 18, 2006. Appellant then filed an administrative appeal with the Department's Appeals Office. A hearing was held on September 28, 2006, at which Appellant presented documentary and testimonial evidence. The hearing officer upheld the Department's determination in a written decision dated January 2, 2007. This timely appeal followed.
 Standard of Review
Rhode Island General Laws 1956 § 42-35-15 provides this Court with the specific authority to review decisions of administrative agencies. Under § 42-35-15(g), this Court is empowered to affirm, reverse or remand an agency's decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 42-35-15(g). This Court may only reverse or modify an agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or *Page 4 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
When reviewing an administrative agency's factual findings, this Court "must uphold the agency's conclusions when they are supported by legally competent evidence on the record." Interstate Navigation Co. v. Divisionof Public Utilities and Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003). In short, if an agency has applied the law correctly and an examination of the record reveals that the agency's decision is supported by some credible or competent evidence, this Court shall not disturb the agency's determination.
 Analysis
Appellant essentially raises three arguments in support of its appeal to this Court. Appellant first contends that the Department's decision constitutes an invalid amendment of the Principles as it adopted new definitions of "replacement beds" and "renovations" without following the statutory requirements found in Rhode Island's Administrative Procedures Act. See Section 42-35-1 et seq. Appellant then urges this Court to find that — even if the Department did not amend the Principles by its decision — the Department's application of those Principles should be reversed as arbitrary and capricious because the Department failed to apply the Principles consistently. Finally, Appellant contends that the Department's application of the rules violates State law requiring the Department to provide reimbursement that is "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." Section 40-8-19(a).
In response, the Department argues that it properly characterized Phase 2 of Appellant's construction project as a renovation rather than a replacement of beds. According to the Department, its decision did not amend the Principles, but was rather a reasonable interpretation of the Principles that is entitled to deference by this Court. By arguing that its interpretation of *Page 5 
the Principles was proper, the Department impliedly asserts that its valid construction of the Principles cannot be contrary to the mandate of § 40-8-19(a) that reimbursement to nursing facilities be "reasonable and adequate."
 Rulemaking Distinguished from Adjudication
A threshold issue is whether the Department's decision constituted an adjudication of Appellant's specific case, or whether the Department's action is more properly viewed as engaging in rulemaking in contravention of § 42-35-3.[2] Because it is uncontested that the Department did not follow any of the requirements laid out in § 42-35-3
for adopting new rules, it follows that the Department's decision must be reversed if this Court determines that the Department exceeded its statutory authority by engaging in unauthorized rulemaking. Before analyzing this issue, this Court first notes that neither Appellant nor the Department has referred this Court to any authority on the distinction between agency rulemaking and agency adjudication.
According to Rhode Island law, an agency "rule" is an "agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedure, or practice requirements of any agency . . . but does not include . . . an order." Section 42-35-1(8). An order is defined as "the whole or part of a final disposition, whether affirmative, negative, injunctive or declaratory in form, of a contested case." Section 42-35-1(10). Finally, a "contested case" consists of "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." Section 42-35-1(3). *Page 6 
These statutory definitions can be further explicated by reference to federal law. The Federal Administrative Procedure Act defines a rule, in pertinent part, as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). An agency order is defined as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making." 5 U.S.C. § 551(6). This Court finds that the definitions of "rule" and "order" found in §42-35-1 and 5 U.S.C. § 551 are substantially similar and that it is therefore appropriate to look to federal case law as persuasive authority in interpreting these terms.
The phrase, "contested case," is not defined within 5 U.S.C. § 551. However, that statute does define "adjudication" as an "agency process for the formulation of an order." 5 U.S.C. § 551(7). Because both an "adjudication" and a "contested case" result in the issuance of an "order," this Court finds that adjudicatory proceedings under federal law are equivalent to contested cases under Rhode Island law. SeeDebruhl v. District of Columbia Hackers' License Appeal Board,384 A.2d 421, 424 (D.C.App. 1978) (where the court, interpreting a nearly identical definition of "contested case" in the District of Columbia Administrative Procedure Act, found that such definition was intended to be "synonymous with that of `adjudication' in the Federal Administrative Procedure Act").[3]
In general, an agency creates rules "to resolve broad policy questions affecting many parties and turning on issues of `legislative fact.' Adjudicatory hearing procedures are used in individual cases where the outcome is dependent on the resolution of particular `adjudicative *Page 7 
facts.'" Independent Bankers Ass'n of Georgia v. Board of Governors ofFederal Reserve System, 516 F.2d 1206, 1215 (D.C. Cir. 1975). In addition, "because adjudications involve concrete disputes, they have an immediate effect on specific individuals (those involved in the dispute). Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule subsequently is applied."Yesler Terrace Community Council v. Cisneros, 37 F.3d 442, 448
(9th Cir. 1994). "The form of the proceeding is not dispositive; what counts is its effect." Id. at 449. Thus, a proceeding taking the form of an adjudication can actually have the effect of a rule and, therefore, be subject to applicable notice and comment requirements. Id.
In the instant case, the Department made its decision after holding an exit review conference with Appellant. The decision is set forth in a letter dated March 14, 2006, from Gregory A. Gongoleski to Paul V. Martin, Appellant's administrator. The Department determined that the only dispute between the parties concerned the characterization of Phase 2 of Appellant's construction project. The Department also found that Appellant had expended $408,822 in conducting the Phase 2 renovations. As the renovations were done entirely on the building's original footprint — which at the time contained forty beds — the Department calculated that the cost of Phase 2 was slightly more than $10,000 per bed.
In rendering its decision, the Department pointed out that the Principles define a renovation or major improvement as a "project with capitalized cost equal to or greater than $1000 per bed." The Principles differentiate a "replacement of beds" from an addition of new beds "in that a certain number of beds have replaced those that were initially constructed." However, the Principles do not specify the sorts or amounts of improvements necessary to constitute a replacement bed rather than a renovation or major improvement. However, the Department also informed Appellant that the Principles reserve the right to the Department to *Page 8 
exercise its discretion in making "determinations of allowable costs in areas not specifically covered in the Principles or in the Rules and Regulations of Federal Medicare — Title XVIII."[4]
Pursuant to this authority, the Department stated that, in order to qualify as a bed replacement, "the cost of renovation/improvement must be equal to or greater than the cost of constructing one nursing facility bed in the year in which the renovation takes place. In this situation, the cost would have to be greater than $67,406 per bed."See Appellant's Mem. of Law, Ex. D at 4. The Department also based its decision on the additional consideration that Phase 2 consisted of renovations within the building's original footprint. Furthermore, the existing foundation, walls and roof were all utilized in Phase 2, and — unlike in Phase 1 — an addition to the building had not been constructed.
Based on the foregoing, this Court finds that the determination of whether a project qualifies as replacement of beds or a renovation project is an area "not specifically covered in the Principles," and that the Department is permitted to exercise its discretion in determining allowable costs. A review of the record makes it clear that the Department did exactly this and that the Department acted pursuant to its pre-existing authority to determine allowable costs in situations not explicitly controlled by the Principles. The Department did not announce a new rule of general applicability as it specifically considered the facts unique to Appellant's case; namely, the construction of an addition in Phase 1.[5] Nothing in the Department's decision indicates that the reasoning used in the instant case will govern the resolution of future cases. *Page 9 
This Court finds that the Department engaged in adjudication as it resolved a concrete dispute and determined adjudicative facts rather than formulated a broad policy affecting many different parties. Because the Department's decision is an adjudication of Appellant's specific case based on already existing rules of law, this Court finds that the Department was not subject to the rulemaking requirements found in § 42-35-3.
Even if Appellant could show that the Department's decision altered its policy, such a showing would not by itself necessitate compliance with rulemaking procedures. "The APA does not require that all specific applications of a rule evolve by further, more precise rules rather than by adjudication." Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 96
(1995) (citing SEC v. Chenery Corp., 332 U.S. 194 (1947)); see alsoNorth American Van Lines, Inc. v. United States, 412 F. Supp. 782, 791
(N.D.Ind. 1976) ("[t]here is, of course, no requirement that an agency formulate its substantive rules by the rulemaking process; a case-by-case or adjudicative approach is permissible"). This is because the United States Supreme Court has recognized that agencies must retain a certain amount of flexibility in order to cope with unique situations.SEC v. Chenery Corp., 332 U.S. 194, 202 (1947).
When an issue arises that could not have been reasonably foreseen, or that must be resolved even though no rule of general applicability is on point, "the agency must retain power to deal with the problems on a case-by-base basis if the administrative process is to be effective."Id. at 202-203. An agency's "choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." Id. at 203. Therefore, even if the Department's decision in the instant case did work a substantive change in departmental policy, this Court finds that any such change did not *Page 10 
transform the Department's action from adjudication to rulemaking. In sum, this Court finds that the requirements contained within § 42-35-3
are inapplicable to the instant case.
 The Department's Interpretation of the Principles
Having found that the Department's action in this case constitutes adjudicative action, this Court must next determine whether the Department's interpretation of the Principles was proper or whether the Department acted arbitrarily and capriciously in characterizing Phase 2 of Appellant's construction project as a renovation rather than a replacement of beds. At the outset, this Court recognizes that it must pay deference to an administrative agency "when it interprets a statute whose administration and enforcement have been entrusted to the agency."Pawtucket Power Assocs. Ltd. Partnership v. Pawtucket, 622 A.2d 452, 456
(R.I. 1993). Deference is warranted even if "the agency's interpretation is not the only permissible interpretation that could be applied."Id. at 456-457 (citing Young v. Community Nutrition Institute,476 U.S. 974 (1986)).
Section 40-8-13 states that the Department's director "shall make and promulgate such rules, regulations, and fee schedules not inconsistent with state law and fiscal procedures as he or she deems necessary for the proper administration of this chapter and to carry out the policy and purposes thereof." Section 40-8-19 instructs the Department to reimburse nursing facilities for costs they incur in accordance with Federal Medicaid rules enumerated in 42 U.S.C. § 1396a(a)(13). To that end, the statute directs that the Department "shall promulgate or modify the principles of reimbursement for nursing facilities currently in effect on July 1, 2003 to be consistent with this section and Title XIX,42 U.S.C. § 1396 et seq., of the Social Security Act." Section40-8-19(a). Given the statutory schema, this Court finds that the Department is entrusted with both the administration and enforcement of § 40-8-1 et seq. Therefore, the Department's *Page 11 
interpretation of the Principles, promulgated and amended pursuant to § 40-8-19, is entitled to deference.[6]
Appellant has argued that the Department's application of the Principles in the instant case is arbitrary and capricious. Under the arbitrary and capricious standard, an agency's decision will be upheld as long as the "administrative interpreters have acted within their authority to make such decisions and their decisions were rational, logical, and supported by substantial evidence." Goncalves v. NMUPension Trust, 818 A.2d 678, 683 (R.I. 2002). This Court may not find that an administrative agency's decision is arbitrary and capricious "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." Id. (quoting Coleman v.Metropolitan Life Insurance Co., 919 F. Supp. 573, 580 (D.R.I. 1996)). This Court does not have the authority to substitute its judgment for that of the agency — even if this Court disagrees with its interpretation of the statute that it is responsible for administering — if the agency's statutory interpretation is reasonable. Id.
Appellant contends that the Department's application of the Principles was arbitrary and capricious because the Department failed to apply them consistently. According to Appellant, the Department applied differing standards in its analysis of Appellant's construction project. The Department determined that Phase 1 resulted in new and replacement beds even though it found that the cost per bed of Phase 1 — roughly $61,000 — did not meet or exceed the value of a new bed. Appellant argues that the Department is constrained to apply this same rationale to Phase 2 and finds that its cost of $10,822 per bed qualifies as a bed replacement.
After reviewing the entire record, this Court cannot agree that the Department improperly found that Phase 2 resulted in renovations or varied its definition of "bed replacement." When *Page 12 
applying the Principles, it appears that a construction project's cost per bed is not determinative; rather, cost is simply one of several factors that the Department takes into account. Mr. Durand, the Department's Chief Rate Setting Analyst, testified at the administrative hearing that cost per bed is "one of the ways that the Rate Setting Unit determines whether it's a replacement bed or a renovation project." Mr. Durand stated that the value of a new bed was $67,406 at the time of Appellant's project, and that the cost of Phase 1 was "roughly $61,000 per bed." However, the Department considered six beds as new beds — regardless of the cost per bed — because Appellant's capacity increased from sixty beds to sixty-six beds. As for the other twenty beds involved in Phase 1, the Department found that they were "truly replacement beds" based on the additional fact that the beds were located in a new addition to the building and, therefore, outside of the original footprint.
Mr. Durand stated that, when it came to Phase 2, the Department calculated the cost of Phase 2 renovations at $10,822 per bed, significantly less than the value of a new bed, as well as the cost per bed of Phase 1 construction. In addition, the Department found that Phase 2 consisted of renovations to the existing building rather than construction of a new wing. Mr. Martin, Appellant's Administrator, testified that Phase 2 involved transforming bed space into common areas, a bathing facility, and additional storage. Phase 2 also resulted in the replacement of ceilings and wallpaper, as well as the installation of a new fire alarm system, a new hot water system, and a new air-conditioning system. All of this work took place within the existing walls of the building's original footprint.
In her written decision, the hearing officer stated that "a replacement is generally defined to be something new that takes the place of something that did previously exist, and a renovation or major improvement is a change to something that already exists." This court finds that these *Page 13 
definitions are harmonious with the ordinary meanings of the words "replacement" and "renovation." Applying these ordinary definitions to the instant case, this Court finds that the record contains substantial evidence that Phase 2 is properly characterized as a renovation because it involved changes to already existing areas in the building's original footprint rather than installation of new or replacement beds.[7] This Court finds that the Department's finding that Phase 2 qualified as a renovation rather than a bed replacement was not arbitrary and capricious.
It is also clear to this Court that the Department's decision was not based solely on the cost per bed of each phase of construction. While the cost per bed is obviously important, the Department looked to the presence or absence of additional factors. It appears that, in this case, Appellant's construction of a new addition was the determinative factor in the Department's characterization of each stage of the project. This Court finds that the Department applied the same definitions to both phases, as in each case the Department looked to the cost per bed, as well as other factors in addition to pure cost.
Given all of the foregoing, this Court finds that the Department consistently applied the same standard to each phase of construction and simply reached two different conclusions. The Department's application of the Principles was rational, logical, and supported by the substantial evidence in the record as to the character of the different stages of Appellant's project. This Court finds that the Department's decision to exercise its discretion in favor of Appellant only in Phase 1 was not arbitrary and capricious.[8] *Page 14 
 Reasonable and Adequate Reimbursement
Turning to Appellant's final contention, Appellant argues that the Department's decision results in a reimbursement rate that is not "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in accordance with42 U.S.C. § 1396a(a)(13)." Section § 40-8-19(a). Appellant claims that its reimbursement rate increased by only fifty-eight cents per patient per day despite an expenditure of more than two million dollars. According to Appellant, it will not completely recoup its entire investment for 140 years, and is unable to meet its financial obligations.[9]
While use of the phrase "reasonable and adequate" clearly contemplates and provides for a level of agency discretion in setting reimbursement rates, the statute fails to provide a definition of "reasonable and adequate" to guide the Department's initial determination and this Court's review. In other words, the statute is less than illuminating. Moreover, the definition of "reasonable and adequate" under § 40-8-19(a) has not been addressed in any previous Rhode Island case. As such, this Court finds it is appropriate to refer to the statutory history in order to gain insight as to the proper interpretation of the phrase.
The General Assembly enacted § 40-8-19(a) in 1993. The language of the statute explicitly states that it is to be in "accordance with" and "consistent with" 42 U.S.C. § 1396a of the Social Security Act. In 1993,42 U.S.C. § 1396(a) stated in pertinent part that a state's medical assistance plan must provide for payment of "nursing facility services . . . which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in *Page 15 
order to provide care and services in conformity with applicable State and Federal laws." Although this particular language was repealed in 1997, this Court finds it significant that § 40-8-19(a) exactly mirrored the federal statute's language when it was enacted in 1993. Given the similarity between these sections, as well as the additional language stating that § 40-8-19(a) was intended to be read in conformity with42 U.S.C. § 1396a, this Court deems it appropriate to refer to Federal Courts' interpretation of the phrase "reasonable and adequate."
It is first important to note that the statute gives the state "broad legal power to determine the scope of the statutory words `reasonable and adequate.'" Hoodkroft Convalescent Center, Inc. v. New HampshireDiv. of Human Services, 879 F. 2d 968, 972 (1st Cir. 1989). The term does not establish "a precise number, but rather a rate which falls within a range of what could be considered reasonable and adequate." Folden v. Washington State Dep't of Social and HealthSvcs., 981 F.2d 1054, 1058 (9th Cir. 1992). Thus, it has been said that the federal statute does not require a state to reimburse "every allowable cost." Unicare Health Facilities, Inc. v. Miller,481 F. Supp. 496, 499 (N.D.Il. 1979) (citing Assoc. of Health CareFacilities, Inc. v. Minnesota Dep't of Public Welfare, 602 F.2d 150, 153
(8th Cir. 1979)). Indeed, the state is "clearly not required to reimburse [a nursing facility] for the costs it actually incurs, or even for the costs it reasonably incurs," but only those "that would be reasonably incurred by an economically and efficiently run facility." Port Chester Nursing Home v. Axelrod, 732 F. Supp. 440,445 (S.D.N.Y. 1990) (citing Friedman v. Perales, 668 F. Supp. 216,222-223 (S.D.N.Y. 1987), aff'd, 841 F.2d 47 (2nd Cir. 1988)).
Here, Appellant has alleged that its costs will not be recovered for an unreasonably long period of time, specifically, 140 years. However, this allegation is predicated on consideration of the entire amount expended in construction, two million dollars. As already noted, the only issue *Page 16 
in this case is the reimbursement rate for the $480,822 expended on Phase 2. As Appellant has not provided this Court with a proper claim on this issue, it inevitably follows that Appellant is unable to show that the rate assigned to it does not provide reasonable and adequate compensation in violation of § 40-8-19(a).
Even if Appellant had presented this Court with a proper factual basis for it claim, Appellant's argument is still deficient. Quite simply, Appellant has failed to even allege a proper range for the reimbursement of expenses incurred by an efficiently and economically operated facility. Neither has Appellant argued or shown that Appellant is itself an efficiently and economically operated facility, nor provided an accounting showing its expenditures compared to its reimbursement rate. Therefore, Appellant's argument that the Department's decision violates the "reasonable and adequate" requirement found in § 40-8-19(a) is without merit as the record is wholly devoid of evidence to support Appellant's contention.
 Conclusion
After a thorough review of the entire record, this Court finds that the Department's decision constituted an adjudication of a contested case to which the Rhode Island Administrative Procedures Act's notice and comment requirements for agency rulemaking do not apply. This Court also finds that the Department's decision was not arbitrary and capricious as it was logical, reasonable, and based on substantial evidence. Finally, this Court finds that the Department's decision did not violate G.L. 1956 § 40-8-19(a). Given all of the foregoing, the Department's decision is affirmed.
Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] Neither party has addressed Stage 3 in a meaningful way as each has simply stated that Phase 3 involved the completion of renovations. As such, the only issue before this Court is the Department's determination as to Phase 2.
[2] This section requires an agency to, among other things, provide public notice of its intent to adopt, amend, or repeal any rule, provide all interested parties an opportunity to submit written or oral comments, consider all such comments received, and demonstrate the need for engaging in rulemaking.
[3] This Court recognizes that the District of Columbia Court of Appeals "is the equivalent of a state supreme court." Grendell v. OhioSupreme Court, 252 F.3d 828, 835 n. 3 (6th Cir. 2001);see also 28 U.S.C. § 1257(b). Nonetheless, this Court finds it to be a persuasive authority given the obvious similarity between G.L. 1956 § 42-35-1 et seq. and the District of Columbia Administrative Procedure Act.
[4] This Court finds that Appellant has not argued that any of the issues in this case are governed by federal regulations and has therefore waived the issue.
[5] It should be noted that the Department found that Appellant's installation of twenty-six beds in the new wing during Phase 1 qualified as new or replacement beds "regardless of the cost attributable" to such work. At the administrative hearing, a witness for the Department testified that the cost of Phase 1 actually amounted to approximately $61,000 per bed. The witness stated that the Department characterized Phase 1 as resulting in the addition of six beds and the replacement of twenty other beds based on the fact that these twenty-six beds were located in an entirely new addition to the building. See Appellant's Mem. of Law, Ex. A at 10-11. Such an investigation into Appellant's construction project reinforces the conclusion that the Department was concerned only with the facts before it, and not with crafting new policy to be applied prospectively.
[6] This Court notes that Appellant does not allege that the Principles were adopted contrary to the Department's statutory authority. As such, the Principles carry the "force and effect of law and enjoy a presumption of validity." Parkway Towers Assocs. v.Godfrey, 688 A.2d 1289, 1293 (R.I. 1997).
[7] Indeed, the number of beds in the original footprint was actually reduced from sixty to forty.
[8] The Department's permissible interpretation of the Principles notwithstanding, Appellant urges this Court to find that the Department arbitrarily and capriciously eliminated any distinction between a "bed addition" and a "replacement bed." However, the evidence contained in the entire record shows that there are significant distinctions between bed additions and replacement beds. Specifically, when a nursing facility increases its capacity, the Department considers such increase to be a bed addition regardless of its cost, while a bed replacement depends on both cost and the presence of other relevant factors. This Court therefore finds Appellant's argument unconvincing.
[9] Appellant has only contested the Department's rate of reimbursement as to Phase 2, and has not raised the issue as to the adequacy and reasonableness of its reimbursement for Phases 1 and 3. For purposes of this discussion then, Appellant's expenditure is only the amount it spent on Phase 2, or $408,822.