CHIEF PROBATION OFFICERS OF CALIFORNIA, and the County of Santa Barbara, California, Plaintiffs–Appellants,

v.

Donna SHALALA, Mary Jo Bane, and Lavinia Limon, in their official capacities, Department of Health and Human Services and Administration for Children and Families, Defendants–Appellees.

No. 96–15897.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1997.

Decided July 8, 1997.

Charles A. Miller, Phyllis D. Thompson,
and Ann–Kelley Yelverton, Covington & Bur-

ling, Washington, DC, for plaintiffs-appellants.

Robert E. Keith and Charles P. Gillet, Office of General Counsel, Children, Families, and Aging Division, Department of Health and Human Services, and Frank W. Hunger, Michael J. Yamaguchi, William Kanter and Bruce G. Forrest, Department of Justice, Washington, DC, for defendants-appellees.

Before: WHITE,[*] Associate Justice, Retired, CANBY and RYMER, Circuit Judges.

WHITE, Associate Justice, Retired:

The Department of Health and Human Services (HHS or the Agency) issued a rule that terminated federal matching funds for state juvenile justice programs. Appellants, County of Santa Barbara (County or Santa Barbara) and Chief Probation Officers of various California Counties (Officers), contend that this rule is void for failing to comply with the Administrative Procedure Act's (APA) procedural "notice and comment" requirement. We hold that the directive is an "interpretive" rule exempt from the APA's notice and comment mandate.

## I. BACKGROUND

■ This case is situated at the intersection of two statutes, one procedural and one substantive. The procedural statute is the APA, which requires agencies—when adopting, repealing, or amending rules—to issue in the Federal Register a "notice of proposed rule making" advising the public of the terms or substance of the proposed rule and a description of the subjects and issues involved. See 5 U.S.C. § 553(b). This re-

quirement is designed to give interested persons, through written submissions and oral presentations, an opportunity to participate in the rulemaking process. See 5 U.S.C. § 553(c). The notice and comment requirement does not apply, however, to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A).[1] Rules requiring notice and comment are invalid if the promulgating agency fails to comply with the applicable procedural requirements. See Chrysler Corp. v. Brown, 441 U.S. 281, 313, 99 S.Ct. 1705, 1723–24, 60 L.Ed.2d 208 (1979); San Diego Air Sports Cntr., Inc. v. F.A.A., 887 F.2d 966, 971 (9th Cir.1989).

The substantive statute is the Emergency Assistance Program (EAP). The EAP, established by the 1967 amendments to the Social Security Act, provides federal matching funds to participating states for certain benefits they make available to needy families. Participating states are eligible to receive fifty percent of their "total amount expended ... on emergency assistance to needy families with children" in accordance with a plan approved by HHS. 42 § U.S.C. 603(a)(5). "Emergency assistance to needy families with children" is defined as money payments, payments in kind, or other payments as the State agency may specify, as well as such services as the Secretary may designate. See 42 U.S.C. § 606(e)(1)(A) & (B). The Act's major proviso for this assistance is that it relate to a child who is "without available resources" and that "the payments, care, or services involved are necessary to avoid destitution of such child or to provide living arrangements in a home for such child." Id. An HHS regulation defined the services authorized by § 606(e)(1)(B) as "information, referral, counseling, securing family shelter, child care, legal services, and any other services that meet needs attributable to the emergency or unusual crisis situations." 45 C.F.R. § 233.120(b)(2).

---

* The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

1. Also exempt under the APA are rules "relating to ... public property, loans, grants benefits, or contracts." 5 U.S.C. § 553(a)(2). HUD, however, voluntarily has adopted requirements for notice and comment rule making in these situations. See 24 C.F.R. § 10.1; see also Yesler Terrace Community Council v. Cisneros, 37 F.3d 442 (9th Cir.1994).

The current situation arises out of the application of the EAP to the juvenile justice context. Until 1993, no state plan provided for benefits or services for children in the juvenile justice system. In that year, however, HHS began approving plans providing for these benefits and services. California was one of thirteen states to secure approval of a plan that contained funding for juvenile justice programs. Appellants, the County and the Officers, subcontracted with the State. Under this arrangement, the appellants expended funds on juvenile justice programs, then submitted their expenses to the State, which sought reimbursement from HHS and remitted the money back to them. The parties agree that the county-state agreement remained in effect through June 30, 1996.

Action Transmittal No. ACF–AT–95–9 cancelled this arrangement. Issued by the Administration For Children and Families (ACF), a component of HHS, on September 12, 1995, the rule advised that the agency would no longer approve federal funding "for the costs of benefits or services provided to children in the juvenile justice system" in connection with the EAP. App. § 9, at 1. AT–95–9 also announced that the Agency would terminate funding for previously approved costs as of December 31, 1995. *Id.* at 4. After examining its own regulations and congressional intent regarding the EAP, the rule explained that

> costs for services provided to children in the juvenile justice system as the result of alleged, charged, or adjudicated delinquent behavior bear no such "valid relationship" to the context or purpose of the EA program and, therefore, do not qualify for Federal matching under it.... Accordingly, we do not think that it is appropriate for a State to claim under the EA program either the program or administrative costs incurred in connection with such children.

AT–95–9, App § 9, at 2, 3. The Agency did not give notice or seek any comments before issuing this rule.

The Officers filed this suit, seeking both a declaratory judgement that AT–95–9 was invalid because of its failure to provide for notice and comment and an injunction against its enforcement. The Officers did not contend that AT–95–9 was a substantively invalid construction of either the statute creating the EAP or the regulations relating to it. Rather, they argued that the rule was procedurally void for failing to comply with the APA's notice and comment requirement. On December 29, the district court denied a temporary restraining order and set a hearing for February 7 on a preliminary injunction motion. On February 2, the Officers moved to consolidate the merits of the dispute with consideration of the preliminary injunction. *See* Fed.R.Civ.P. 65(a)(2). On the day of the hearing, the Officers also sought and received leave to file an amended complaint adding the County of Santa Barbara as a plaintiff.

After full arguments and briefing, the district court granted HHS's motion to dismiss. *See Chief Probation Officers of Cal. v. Shalala,* No. C–95–4644–DLJ, slip op., 1996 WL 134890 (N.D.Cal. Mar. 14, 1996). As a threshold matter, the court, in an extensive discussion, ruled that the County had standing to litigate its claims. The County met not only the core Article III requirements of injury-in-fact, causation, and redressibility, the court reasoned, but also the prudential limitations of third party standing, zone of interest, and the related *"Block* rule." *Id.* at 2–6. Having found a justiciable controversy for one plaintiff, the court found it unnecessary to pass on the standing of the Officers. *Id.* at 6. Turning to the merits, the district court rejected arguments that AT–95–9 was a "substantive" rule and held the rule to be interpretive and therefore exempt from notice and comment. *Id.* at 7–10.

## II. STANDARD OF REVIEW

 Whether the rule at issue is "interpretive" or "legislative" is a question of law, which we review de novo. *See Linoz v. Heckler,* 800 F.2d 871, 875 (9th Cir.1986). Questions regarding jurisdiction are also legal matters subject to de novo review. *See Takhar v. Kessler,* 76 F.3d 995 (9th Cir.1996).

## III. JURISDICTION

The Agency contends, without evident conviction, that this Court lacks jurisdiction be-

cause simultaneously this controversy is moot, the plaintiffs lack standing, and the case is unripe. We address these contentions in turn.

## A. Mootness

■ The Agency on this appeal presents an issue of mootness, raised here but not in the district court apparently because of intervening events. The Agency does not assert that the case is actually moot; but it does argue that there is a real question about whether there remains a case or controversy to be decided and suggests that we remand for the district court to decide that issue.

The Agency first suggests that there is no assurance that the State will ever present a claim for post-December 31, 1995, matching funds, at least as long as AT–95–9 is on the books. If AT–95–9 is fatally flawed, however, the State's obligation to present claims for matching funds under its contract with its counties did not expire until the end of June, 1996. And absent AT–95–9, there is no suggestion that the State would not present Santa Barbara's claim for the first half of 1996, as well as the claims from other counties. In this respect, it is well here to record what Francisco Sanchez of the California Department of Social Services advised the district court:

> if the Action Transmittal were to be rescinded or invalidated, or if the Court were to bar HHS from implementing the Policy announced in the Action Transmittal, [California] would process the Probation Department claims pursuant to [the agreement with the counties] and would again forward matching federal dollars to the County Probation Departments.

Reply Br. at 22 (citing CR 31 ¶ 8). HHS also suggests that the demise of the EAP with the signing into law on August 22, 1996, of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. No. 104–193, and California's efforts to have its plan approved under the new Act, which substitutes block grants for matching funds,

presents another question about mootness. But the new Act allows claims for matching funds for a period prior to the expirations of the former programs to be presented until August 22, 1998. Absent AT–95–9, Santa Barbara would surely have a valid claim under its contract with the State, at least for the first half of 1996. In sum, we do not believe that the case is moot or that there is any serious question that it is.

## B. Standing

■ The Agency asserted in the district court that neither the Officers nor Santa Barbara County had standing to bring this action. The district court rejected the attack on the County's standing in a full and persuasive opinion. It found it unnecessary to decide the standing of the Officers. In this court, the Agency assumes that Santa Barbara had standing in the lower court but in a single sentence argues that the county no longer has that status: "In the absence of any post-January 1, 1996 submission by the State on behalf of Santa Barbara County to HHS for matching funds germane to this dispute, that County has no injury that can be redressed in this proceeding." Agency Br. at 32.

For the reasons set out in holding that the case is not moot, which we need not repeat, we do not agree with this submission. This also relieves us of further discussion of the intricacies of standing, especially since we essentially agree with the district court. The County still has standing to challenge AT–95–9.

■ As for the Officers, HHS argues in one page that neither the organization nor its members are within the zone of interests intended to benefit from the EA program. The district court did not decide this standing issue, and the appellants are apparently content with this disposition. We are also content not to decide an issue that the district court put aside as unnecessary to resolution of the case.[2]

---

**2.** We do, however, note that the zone of interests test is not a demanding one. To fall outside the "zone" of interests, the plaintiff's interests must be "so marginally related to or inconsistent with

the purposes implicit in the statute that it cannot be reasonably assumed that Congress intended to permit the suit." *Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93

## C. Ripeness

 The Agency also calls for dismissal on the ground that the dispute is not ripe for judicial action, an issue which, like mootness, was not before the district court. It notes in its page-and-a-half discussion that there is as yet no administrative proceeding involving a claim by California that HHS has sought to deny. "Assuming that one would occur," Agency Br. at 34, the Agency points out that the Departmental Appeals Board is authorized to review and overturn AT–95–9 on either procedural or substantive grounds. Ordinarily, the Agency asserts, the possibility of relief before final agency decision would stand as a barrier to a lawsuit. Perhaps, it concedes, when the lawsuit was begun, the hardship alleged by plaintiffs was sufficient to justify judicial action. But today it is said that the most they could possibly obtain is "some very small amount of funding (relatively speaking) for a short-lived period of time before the new PRWORA kicks in." Agency Br. at 34. The Agency notes that *Municipality of Anchorage v. United States,* 980 F.2d 1320, 1326 (9th Cir.1992), ruled that the hardship to the parties that can outweigh the interest of deferral to federal agencies must be "immediate, direct, and significant." This admonition is satisfied here: the County has suffered and is suffering now a direct and significant hardship;[3] and the other 57 counties participating in the EA program should not be forgotten in the ripeness calculus. Moreover, it should not take much hardship to overcome the asserted interest in awaiting agency action when no proceeding is pending, and there is no indication that there ever will be.

The parties have briefed and argued the merits, we have studied the briefs, no constitutional issue weighs in the balance, and we should decide the case.

## IV. THE MERITS

 We turn, then, to evaluate the County's arguments on the merits. The crux of the County's contentions is that it is still entitled to EAP matching funds for its juvenile justice expenditures because AT–95–9 is procedurally invalid. The rule is "substantive" rather than "interpretive," the County asserts, because it constitutes an effectively binding rule that represents an about-face from the Agency's prior position.

### A. *Shalala v. Guernsey Memorial Hospital*

We start with *Shalala v. Guernsey Memorial Hospital,* 514 U.S. 87, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995), because the Agency submits that *Guernsey* controls the case before us and requires affirmance of the district court's decision. *Guernsey* involved a challenge to the validity of a Medicare reimbursement guideline, PRM § 233, adopted without notice and comment. The challenge to PRM § 233 was occasioned by a claim for reimbursement from Medicare of a sizeable portion of a certain loss suffered by the hospital in connection with refinancing its bonded debt. Departing from Generally Accepted Accounting Practices (GAAP), PRM § 233 provided that the loss should be amortized over the life of the old bonds rather than reimbursed in the year of the refinancing. The hospital insisted that PRM § 233 was not a valid interpretive rule and could not be since it was inconsistent with the Secretary's existing regulations requiring application of GAAP, under which it could write off the loss in one year. The court of appeals agreed with the hospital and invalidated PRM § 233 for failing to follow the notice and comment rule.

The Supreme Court reversed. The Court readily recognized that APA rulemaking would be required if PRM § 233 adopted a new position inconsistent with any of the

---

L.Ed.2d 757 (1987). A plaintiff need only be "arguably" within the zone to satisfy this prudential requirement. *Id.*

**3.** The Agency's attempt to attenuate the hardship by describing the amount at issue as "small" is both incorrect and beside the point. It is incorrect because the $1.2 million impact of ER 9 on the County for the period January 1 through

June 30 is certainly a "significant" sum. It is also beside the point because, in the absence of factors that will render this issue more fit for judicial review in the future, federal courts are not divested of federal question jurisdiction simply because the amount of money at stake is not large. *See* 28 U.S.C. § 1331.

Secretary's existing regulations. But this was not the case; the regulations relied on were not applicable in the reimbursement context. PRM § 233 did not purport to effect a change in existing regulations and was not invalid for that reason.

The Court then ruled that PRM § 233 is a prototypical example of an interpretive rule " 'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.' " *Id.* at 99, 115 S.Ct. at 1239 (quoting *Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 1717 n. 31, 60 L.Ed.2d 208 (1979) (quoting Attorney General's Manual on the Administrative Procedure Act 30, n. 3 (1947))). PRM § 233 purported to be an "application of the statutory ban on cross-subsidization and the regulatory requirement that only the actual cost of services rendered to beneficiaries during a given year be reimbursed." *Id.; see also, e.g., id.* at 99, 115 S.Ct. at 1238 ("[T]he Administrator concluded that amortization *was required* to avoid the statutory ban on cross-subsidization.") (emphasis added). Furthermore, the Court also said that PRM § 233 reasonably implemented the commands of the statute and the regulations.[4] *Id.* at 97–99, 115 S.Ct. at 1238. The Court was careful to note that interpretive rules, while not requiring notice and comment, do not have the force and effect of law and are

not accorded that weight in the adjudicatory process. *Id.* at 99–101, 115 S.Ct. at 1239.[5]

## B. Application of *Guernsey* to this Case

In our case, AT–95–9 fits *Guernsey*'s articulation of an interpretive rule that need not be published for comment. First, AT–95–9, like PRM § 233, was issued to advise the public of the agency's construction of the statute and rules which it administers. As in *Guernsey,* HHS asserted that AT–95–9 was following the congressional edict of the EAP statute and its own regulations interpreting that statute. *See* App. § 9, at 2: ("We believe that costs for services provided to children in the juvenile justice system as a result of alleged, charged, or adjudicated delinquent behavior bear no such 'valid relationship' to the context or purpose of the EA program and, therefore, do not qualify for Federal matching under it."). The County's heavy reliance on *Ohio Department of Human Services v. United States Department of Health & Human Services,* 862 F.2d 1228 (6th Cir. 1988), is thus misplaced. In that case, the agency did not claim its rule was mandated by the statute, and the court found the agency's claim that its prior regulations compelled the rule implausible. *See id.* at 1235 ("The ceiling was in no way compelled by the original regulation, as we read it, or by the underlying statute.").[6]

---

**4.** This holding declares the rule to be substantively valid and not an erroneous construction of the statute. The Court also ruled on the validity of PRM § 233 by holding that it was not inconsistent with any regulation that required the use of the generally applicable rules of accounting in the reimbursement context. In this case, if AT–95–9 were held to be inconsistent with a regulation, it would be invalid and would be enjoined. We have noted that the complaint did not assert that AT–95–9 was substantively invalid. Both parties seem to agree that the issue is whether AT–95–9 was immune from the APA requirement of notice and comment, and the case was tried on that basis. Yet in this Court the County, at one time or another, asserts that AT–95–9 is inconsistent with certain regulations. On the other hand, the Agency asserts that AT–95–9 "does not conflict with the Emergency Assistance Program or any of its regulations." Agency Br. at 15. Although it would seem that whether AT–95–9 is at odds with a regulation is an issue outside the bounds of this case, the parties apparently want that matter settled, and we are inclined to do so in the course of this opinion.

**5.** Four Justices dissented from *Guernsey's* holding on the notice and comment issue on two grounds. See *id.* at 101–03, 115 S.Ct. at 1240. First, the dissent argued that the rule contradicted existing regulations because these regulations did embrace GAAP. See *id.* at 109, 115 S.Ct. at 1243 ("And, contrary to the Secretary's argument, PRM § 233 cannot be a valid 'interpretation' of the Medicare regulations because it is clearly at odds with the meaning of § 413.20 itself."). Second, according to the dissent, the rule was not required by the statute. *See id.* at 112, 115 S.Ct. at 1245 ("Given that neither approach is commanded by the statute, the cross-subsidization argument should not alter our reading of § 413.20.").

**6.** *Ohio* is also fully distinguishable on the ground that the rule at issue in that case had been published as a regulation, thereby carrying the force of law, in the Federal Register and the Code of Federal Regulations. *See id.* at 1231–32. We do not, of course, suggest that every rule interpreting a statute or regulation need not provide for notice and comment. Regulations, for

Also relying on *United States v. Picciotto*, 875 F.2d 345, 346–47 (D.C.Cir.1989), the County contends that the Agency was acting pursuant to its explicit rulemaking power under § 606(c)(1) in issuing AT–95–9. In that case, the agency promulgated regulations and reserved the right to impose additional reasonable restrictions. Thereafter, the agency took advantage of the reservation by imposing additional generally applicable restrictions and conditions without complying with the notice and comment provision of the APA. This general reservation was held to be an unsuccessful effort to issue future regulations without notice and comment.

The County asserts the same prohibited approach is precisely what happened in the case before us. Assertedly, this is so because 42 U.S.C. § 606(e)(1)(A) and (B) specify what emergency assistance to needy families means; Subsection (B) empowers the Secretary to specify the permissible services under the EA program. The Secretary did so in 45 C.F.R. § 233.120(a)(4), which after specifying particular services, ended up with the words "any other services that meet needs attributable to the emergency or unusual crisis situations." This, the County avers, is a reservation of legislative authority as in *Picciotto*. The difficulty with this assertion is that the Secretary never augmented the list of permissible services at all. Santa Barbara says that various states took advantage of this reservation by seeking approval of services for children in the juvenile justice system which HHS granted. But the regulation was not changed; the specific services listed remained the same. AT–95–9 is not vulnerable under the reservation in the Secretary's regulation. What AT–95–9 did was to interpret the regulation not to apply to the juvenile justice system. This was because no services were available under § 606(e)(1) unless there was an emergency, which AT–95–9 ruled children in the juvenile justice system did not present.

The County also claims that HHS has admitted that its view is not required by the statute because the Agency stated in a brief

that it was not contending that the EAP "is susceptible to only one interpretation." Reply Br. at 3 (quoting Def's Op. to Mot. for Prelim. Inj. at 13 n. 8). However that may be, AT–95–9 was published to declare that the EAP statute cannot be properly construed to cover services to those in the juvenile justice system.

Second, AT–95–9 is not inconsistent with a regulation having the force of law. The County argues that, in issuing AT–95–9, HHS contradicted what in effect had become a regulation by the Agency's past practice of approving plans allowing reimbursement for juvenile justice funds. In support of its argument, the County points to 45 C.F.R. § 201.3(d), which requires plan approvals to be "based on relevant Federal statutes and regulations."

We disagree. The prior state plan approvals, which themselves did not go through formal rulemaking procedures, cannot be regulations having the force of law. The prior approvals simply represented the Agency's prior (short-lived) interpretation of the statute. The Agency was free to change that interpretation. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 517–18, 114 S.Ct. 2381, 2389, 129 L.Ed.2d 405 (1994) (Secretary not estopped from changing legal interpretation that she believes to be erroneous); *cf. Alcaraz v. Block*, 746 F.2d 593, 613 (9th Cir.1984) ("The fact that burdens were imposed on [plaintiffs] only goes to the substantial impact of the statute and the regulations, not whether the regulations created law. That the regulations may have altered administrative duties or other hardships does not make them substantive."). Besides, § 201.3 provides that "[a]fter approval of the original plan by the Administration, all relevant changes, required by new statutes, rules, regulations, interpretations, and court decisions, are required to be submitted currently so that the Administration may determine whether the plan continues to meet Federal requirements and policies." Thus, the regulation on which the County relies

example, often spell out what a statute requires. If these rules are held out as having the force of law, they are not immune from the notice and comment procedure. And a rule that an agency

claims is an interpretation of a statute or regulation may be held invalid as being in conflict with the statute or regulation, if challenged on that basis.

itself expressly contemplates that future "interpretations" may alter whether plans continue to be approved.[7]

The County also asserts, weakly, that AT–95–9 is inconsistent with 45 C.F.R. § 233.120(b)(1)(i). That regulation allows EA funding for children who have lived away from home for as long as six months, the County explains, while AT–95–9 "appears to reason" that EA funding may be provided only for "the entire family unit." Reply Br. at 5. We discern no such restriction in AT–95–9. The rule merely forbids EA funding for juveniles in the justice system; it nowhere purports to cut off funds for all family members living outside the household for any reason.

Finally, AT–95–9 itself does not purport to have the force of law or to warrant the deference accorded a regulation that is challenged in the courts. The County argues that AT–95–9 effectively establishes a rule of law that will have a significant impact on its operations in California, as well as the operations of twelve other states.[8] But the rule in *Guernsey* had a significant impact on the litigant in that case as well. Even if the impact of this rule is greater than in *Guernsey*, this Court has made clear that "impact" is not a basis for finding a rule not to be interpretive. *See, e.g., Alcaraz*, 746 F.2d at 613 ("Thus, we have rejected the argument that, for purposes of imposing notice and comment requirements on the agency for a

particular rule, we look to the 'substantial impact' of the rule."); *Linoz v. Heckler*, 800 F.2d 871, 877 n. 8 (9th Cir.1986) ("Although an agency action has a substantial impact on those regulated, it is not subject to notice and comment if it is otherwise exempt under the APA."); *Rivera v. Becerra*, 714 F.2d 887, 890–91 (9th Cir.1983) ("Simply because agency action has a substantial impact does not mean it is subject to notice and comment if it is otherwise expressly exempt under the APA.").

## C. This Court's Precedents

The County nonetheless asserts "that a rule that effects change in agency policy is a legislative rule" under the law of this Circuit even in the wake of *Guernsey*.[9] *See, e.g., Linoz*, 800 F.2d at 871; *Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442 (9th Cir.1994); *Powderly v. Schweiker*, 704 F.2d 1092 (9th Cir.1983); *Alcaraz*, 746 F.2d at 593; *Takhar v. Kessler*, 76 F.3d 995 (9th Cir.1996). Therefore, we examine whether we must read these cases as being overruled by *Guernsey, see United States v. Washington*, 872 F.2d 874, 880 (9th Cir.1989) (a panel of the Ninth Circuit may overturn another panel on the basis of an intervening Supreme Court decision), or whether, upon a careful reading, they are in fact consistent with *Guernsey*, at least for purposes of this case. We conclude that the cases relied upon neither stand for the blanket proposition that

---

7. The County also relies on *County of Alameda v. Weinberger*, 520 F.2d 344 (9th Cir.1975), for its argument that the prior approvals constituted a legislative rule. In that case, HEW sought to recover alleged overpayments to California in connection with the federally funded food stamp program. The state claimed that HEW had approved its cost allocation plan under which there was no overpayment. HEW asserted that it had not finally approved the plan and, in any event, withdrew approval. Among other things, HEW said that the overpayments were contrary to its guidelines. In response, this Court stated that, if HEW had approved the state's plan inconsistent with its guidelines, "it is entirely possible that HEW's approval takes precedence over its guidelines." *Id.* at 351.

*Alameda* does not help the County. To begin with, the case's "entirely possible" speculation occurs in an entirely different legal context. *Alameda* involved a challenge to HEW's "disal-

lowance" authority under 42 U.S.C. § 1316(d), *see id.* at 347; it had nothing to do with a "notice and comment" challenge under the APA. Moreover, it is clear from a companion case handed down on the same day, *California v. Weinberger*, 520 F.2d 351 (9th Cir.1975), that the retroactivity of the "disallowance" was key to the State's arguments and the Court's analysis. In this latter case, the Court noted that the State did "not dispute here HEW's authority to require, prospectively, the adoption by the State of a new cost-allocation method." *Id.* at 352. AT–95–9, as we have explained, was prospective only.

8. The claims of the twelve other states, of course, are not before us.

9. Reply Br. at 14. On the other hand, the County acknowledges that it "do[es] not contend that, under this Court's rulings, every governmental change in existing policy requires notice and comment." *See id.* 17 n. 8.

any change in policy constitutes a legislative rule nor prove that AT–95–9 is a such a rule.

*Linoz,* 800 F.2d at 871, is one of the two principal cases on which the Agency relies. At issue was whether the district court had correctly held that a provision in an HHS manual changing the definition of "nearest hospital with appropriate facilities," as set forth in one of the agency's own legislative rules, was an interpretive rule. *Id.* at 876 (citing 20 C.F.R. § 405.232(1)). This Court reversed, holding that the manual provision could not be interpretive because it was inconsistent with the preexisting legislative regulation. It is obvious that this holding is consistent with *Guernsey's* statement that a rule could not be immune from APA notice and comment if that rule was inconsistent with a regulation. Nor does *Linoz* suggest that AT–95–9 is a legislative rule since it has not been shown that it is inconsistent with a regulation having the force of law.

*Yesler,* 37 F.3d at 442, is the other principal case. In *Yesler,* tenants in public housing projects were entitled by federal statute to a grievance hearing before eviction. In certain circumstances, however, the federal grievance was not required if the relevant state eviction proceedings comported with due process—a determination within the statutory power of the Secretary. The Secretary made the determination and notified the state by letter that its procedures did not offend due process. Certain public housing tenants challenged the lack of notice and comment. Their objection was denied by the district court, which held that the Secretary's determination was interpretive and therefore valid without notice and comment. This Court reversed. "Substantive rules," the panel explained, "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Id.* at 449. Applying this formulation, the Court concluded that "[p]rior to HUD's decision, public housing tenants had a statutory right to a pre-eviction hearing. HUD's decision, made pursuant to authority granted by Congress, eliminated that right for a class of tenants. Therefore, it was a substantive rule." *Id.*

As with *Linoz, Guernsey* does not require overruling *Yesler.* If a rule may not be classified as interpretive if inconsistent with a regulation, surely it cannot qualify as interpretive if it purports to abolish a statutory right. Neither does *Yesler* impeach the district court's holding that AT–95–9 is an interpretive rule. AT–95–9 took away no statutory right; it interpreted the EA legislation as not including from the outset services to children in the juvenile justice system.

The County's explanation of *Linoz* and *Yesler* is "that when an agency makes a change in policy that is not specifically required by statute and that removes existing rights, the rule embodied in such a change is a legislative rule." Reply Br. at 16–17. But the conclusion that AT–95–9 is a legislative rule does not follow. The shortfall in the County's analysis is that, according to the Agency, its rule *is* specifically required by the statute. This factor distinguishes *Linoz,* which excluded from its definition of a legislative rule one that is "neither required nor specifically authorized by the enabling legislation." 800 F.2d at 877. It also differentiates *Yesler* in two important respects. First, the agency there enjoyed unbridled discretion whether to issue a due process determination at all. *See* 37 F.3d at 449 ("Nothing in the statute requires HUD to make a due process determination in the first place."). Second, the agency exercised delegated legislative power to define the threshold requirements of due process that it could, at its discretion, apply. *See id.* at 447 (quoting 42 U.S.C. § 1437d(k)).

This latter distinction also explains *Yesler 's* statement that "[s]ubstantive rules, in contrast, create rights, impose obligations, or effect a change in existing law *pursuant to authority delegated by Congress.*" 37 F.3d at 449 (emphasis added). The agency in that case promulgated the rule pursuant to legislative power delegated by Congress—rather than its own interpretive power over a congressional enactment—so the resulting rule, *a fortiori,* was legislative. The compelled-by-statute distinction also explains why the other cases cited by the County, though relying on a similar test, found the rules at issue to be interpretive. *See Alcaraz,* 746 F.2d at

615 (rule was interpretive when it merely "explained something the statute already required") (also rejecting "substantial impact" test); *Powderly*, 704 F.2d at 1098 (rule was interpretive because "[t]hese provisions only explain what the more general terms of the Act and regulations already provide"); *Takhar*, 76 F.3d at 1002 (same).

■] This interpretation of these cases also keeps them in tune with the Supreme Court's directives in *Guernsey*. If an agency maintains that a rule, not held out as having the force of law, is mandated by statute, it will be legislative under *Guernsey* only if it is inconsistent with an "existing regulation[ ]." 514 U.S. at 100, 115 S.Ct. at 1239. In other words, the rule would have to be inconsistent with another rule having the force of law, not just any agency interpretation regardless of whether it had been codified. As interpreted by the County, these cases would likely be inconsistent with Supreme Court authority. This conclusion would require the reversal of this Court's case law—a situation we obviously prefer to avoid.

This is not to say that *Yesler* and *Linoz* are necessarily congruent with *Guernsey* in all respects. The same is true of *Powderly*, *Takhar*, *Alcaraz* and any other cases in which the definitions of legislative and interpretive rules are verbally different from those in *Guernsey*. If such differences lead to different results in specific cases, *Guernsey* must, of course, control. But this case does not clash with *Guernsey*, and we have no reason to assume that future cases will be irreconcilable either.

### D. Congruence with other Circuits

We are not alone in rejecting the County's position that notice and comment are required whenever an agency changes its policy. In *Orengo Caraballo v. Reich*, 11 F.3d 186 (D.C.Cir.1993), for example, the D.C. Circuit held that the rule at issue did no more that give a reasonable meaning to the words of the relevant statute and, hence, was interpretive. "A statement seeking to interpret a statutory or regulatory term," the Court explained, is "the quintessential example of an interpretive rule." *Id.* at 195. In the course of its discussion, the Court made

clear that a rule is not legislative simply because the agency changes its interpretation of the statute that it administers. It cited to *American Postal Workers Union v. United States Postal Service*, 707 F.2d 548, 558–60 (1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984), where a previous panel had held that the Office of Personnel Management's change in method for computing annuities was not subject to the notice and comment provision of the APA because both the old and new rules were interpretive. "Only where a second rule repudiates or is irreconcilable with [a prior legislative rule]," the Court explained, must "the second rule . . . be an amendment of the first[,] and [therefore] itself be legislative." 11 F.3d at 196 (internal quotations omitted; first two sets of brackets in original).

The Second Circuit has also held that a rule changing the agency's construction of its governing statute is an interpretive rule. *See White v. Shalala*, 7 F.3d 296 (2d Cir. 1993). The plaintiffs in *White* argued that the rule at issue was legislative because it was a change from the agency's prior interpretation of the statute. The court disagreed: "If the rule is an interpretation of a statute rather than an extra-statutory imposition of rights, duties or obligations, it remains interpretive even if the rule embodies the Secretary's changed interpretation of the statute." *Id.* at 304.

The Seventh Circuit Court of Appeals has expressed a similar view. *See Metropolitan School Dist. of Wayne Tp. v. Davila*, 969 F.2d 485, 492 (7th Cir.1992), *cert. denied*, 507 U.S. 949, 113 S.Ct. 1360, 122 L.Ed.2d 740 (1993). In *Davila*, the Court held that a challenged rule was interpretive on facts very similar to ours: (1) the agency possessed rulemaking authority but purported not to be using it; (2) the agency claimed its result was dictated by the statute; and (3) according to the plaintiff, the agency was changing its mind from an earlier interpretation. *Compare* 969 F.2d at 490–93 *with* App. § 9.

Though the Court found the plaintiff's contention that the rule was a change in agency position to be false as a factual matter, it also

deemed this claim "legally irrelevant." 969 F.2d at 491. The *Davila* panel thought it necessary to reject plaintiffs' argument, which would lead to the logical conclusion that "any expression of agency opinion ... would be new and, therefore, legislative." *Id.* It did so by discussing two cases from sister circuits. One was the *Postal Workers* case, discussed above. The other was *Michigan v. Thomas*, 805 F.2d 176 (6th Cir.1986). In that case, the Environmental Protection Agency revised its prior definition of the statutory words "reasonably available control technology." *Id.* at 180. The court held that revision to be interpretive and, hence, not subject to notice and comment. "These two cases," the Seventh Circuit said, "show that an agency's change in its reading of the statute does not necessarily make the rule announcing the change legislative." 969 F.2d at 492.

## V. CONCLUSION

For the foregoing reasons, the judgment of the district court is

*Affirmed.*